Nino Abate, Esq. (SBN 017098)
LAW OFFICE OF NINO ABATE, PLC
6900 E. Camelback Rd., Ste, 604
Scottsdale, Arizona 85251
Tel/Fax: (480) 314-3304
nino@abatelaw.com
*Attorney for Plaintiffs*

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| BHPH Capital, LLC, a Delaware limited liability company,<br><br>Plaintiff,<br><br>vs.<br><br>JV Wholesalers, LLC, a New Jersey limited liability company dba Century Motor Cars; Victor C. Breen and Tara Breen, husband and wife; James M. Lithgow, Jr. and Jane Doe Lithgow, husband and wife; Peter J. Cappiello, Sr. and Ann Cappiello, husband and wife; ABC Corporations, 1-10; DEF Partnerships, 1-10; GHI Limited Liability Partnerships, 1-10; JOHN DOES, 1-10; and Jane Does, 1-10,<br><br>Defendants. | Case No.<br><br>**COMPLAINT** |

COMES NOW Plaintiff BHPH Capital, LLC, a Delaware limited liability company, ("BHPH Capital" or "Lender"), by and through undersigned counsel, for its claims for relief against Defendants, alleges the following:

### ***GENERAL ALLEGATIONS***

1. BHPH Capital, is a Delaware limited liability company, duly formed and validly existing, and legally registered and authorized to conduct business within Maricopa County, Arizona.

2. Defendant JV Wholesalers, LLC, a New Jersey limited liability company dba Century Motor Cars ("Borrower")

3. Defendants Victor C. Breen ("Breen") and Tara Breen, husband and wife, are residents of New Jersey. All of the acts, events, and agreements alleged herein were done for and on behalf of the Defendants' marital community.

4. Defendants James M. Lithgow, Jr. ("Lithgow") and Jane Doe Lithgow, husband and wife, are residents of New Jersey. All of the acts, events, and agreements alleged herein were done for and on behalf of the Defendants' marital community.

5. Defendant Peter J. Cappiello, Sr. ("Cappiello") and Ann Cappiello, husband and wife, are residents of New Jersey. All of the acts, events, and agreements alleged herein were done for and on behalf of the Defendants' marital community.

6. Defendants ABC Corporations 1-10, DEF Partnerships 1-10, and GHI Limited Liability Partnerships 1-10 are fictitious entities that may be parties to this Complaint. Plaintiff reserves the right to amend this Complaint when the true identities of these parties become known.

7. Defendants John and Jane Does 1-10 are fictitious individuals that may be parties to this Complaint. Plaintiff reserves the right to amend this Complaint when the true identities of these parties become known.

## *JURISDICTION AND VENUE*

8. All of the relevant acts, events, and agreements alleged herein were caused, done, transpired or were entered into in Maricopa County, State of Arizona.

9. This Court has jurisdiction pursuant to 28 U.S.C. § 1332.

10. Venue is appropriate in this District pursuant to the subject contracts and 28 U.S.C. § 1391.

/ / /

## *FACTUAL BACKGROUND*

11. BHPH Capital is a lender that offers business lines of credit for Buy-Here-Pay-Here auto dealerships and/or their related finance companies.

12. On or about September 8, 2020, BHPH Capital entered into that certain Loan and Security Agreement ("LSA"), Promissory Note, Guaranty Agreement and other loan agreements ("Loan Agreements") evidencing the revolving Commercial Credit Facility that BHPH Capital provided to Borrower in the amount of $1,500,000.00 (the "Loan").

13. Defendants Breen, Lithgow and Cappiello, and their spouses where applicable (each "Guarantors"), are parties to the Guaranty Agreement, personally guaranteeing the Loan.

**Certain Material Terms of the Loan Agreements**

14. Pursuant to Section 2(a) of the LSA, the Maturity Date of the Loan was September 30, 2021, at which time the total amount of the outstanding but unpaid principal, interest, and all other amounts then owing under the Loan Agreements ("Indebtedness") becomes due and payable.

15. Pursuant to Section 2(c) of the LSA, Lender is authorized to automatically debit payments of interest and other amounts Borrower owes to Lender directly from the FBO bank deposit account ("Payment Account").

16. Pursuant to Section 12(a) of the LSA, Borrower "shall make a daily deposit of all limited to, principal, interest, full payoffs, partial payoffs and insurance proceeds on Sales Contracts, excluding any revenues received as down payments, fees and service payments, into such deposit account."

17. Pursuant to Section 4 of the LSA, Borrower granted Lender a security interest in Borrower's Collateral, including all retail Sales Contracts and other related documents and the Borrower's operating bank account. Lender perfected its first priority security interest in the Sales Contracts by taking possession of all Borrower's Sales Contracts.

18. Pursuant to Section 13(a) of the LSA, Borrower shall be in default if it fails, refuses or neglects "to pay when due any part of the principal of, or interest on the Indebtedness owing to Lender" or any other indebtedness or obligations due and owing to Lender under the Loan Agreements from time to time and such failure, refusal or neglect shall continue unremedied for three (3) days after written notice of such failure.

19. Pursuant to Section 14(b) of the LSA, in the event of a default, Lender may, among other remedies, do the following: may exercise in respect of the Collateral all the rights and remedies of a secured party under the UCC.

20. Pursuant to Section 14(b) of the LSA, in the event of a default, Lender may, among other remedies, do the following: Sell or otherwise dispose of, at its office, on the premises of Obligor or elsewhere, the Collateral, as a unit or in parcels, by public or private proceedings.

21. Pursuant to Section 14(c) of the LSA, in the event of a default, Lender may, at its discretion, among other remedies, do the following: apply or use any cash held by Lender as Collateral, and any cash proceeds received by Lender in respect of any sale or other disposition of, collection from, or other realization upon, all or any part of the Collateral as follows in such order and manner as Lender may elect: (i) to the repayment or reimbursement of the reasonable costs and expenses (including, without limitation, reasonable attorneys' fees and expenses) incurred by Lender in connection with (1) the administration of the Loan Agreements, (2) the custody, preservation, use or operation of, or the sale of, collection from, or other realization upon, the Collateral, and (3) the exercise or enforcement of any of the rights and remedies of Lender hereunder.

22. Pursuant to Section 23 of the LSA, "each of the Loan Agreements have been executed and delivered in the State of Arizona, shall be governed by and construed in accordance with the laws of the State of Arizona. Any action or proceeding against any Obligor

under or in connection with any of the Loan Documents may be brought in any state or federal court within" Arizona.

23. Pursuant to Section 25 of the LSA, "Borrower shall pay all reasonable costs and expenses (including, without limitation, reasonable attorneys' fees) in connection with … (b) any action required in the course of administration of the Indebtedness and obligations evidenced by the Loan Agreements, and (c) any action in the enforcement of Lender's rights upon the occurrence of an Event of Default."

**Borrower's Numerous Defaults of the Loan Agreements**

24. On the Maturity Date of September 30, 2021, Borrower failed to pay the total amount of the Indebtedness then due and owing to Lender.

25. After the Maturity Date, Borrower has failed to make all the payments when due under Loan Agreements.

26. Before and after the Maturity Date, Borrower has failed, refused, and neglected to deposit all revenue in the Payment Account as required.

27. Before and after the Maturity Date, Borrower has taken actions that have had a Material Adverse Effect on the Collateral and Borrower's business.

28. Despite demand, Borrower has failed, refused, and neglected to cure each breach of the Loan Agreements it caused.

29. As a result of Borrower's breach of the Loan Agreements, Lender has suffered substantial damages.

30. Since the Maturity Date, Lender held off from pursuing litigation to enforce the Loan Agreements in order give Borrower some additional time to pay off the Loan; however, despite repeated chances, Borrower has still not been able to pay off the Indebtedness. In addition, Borrower has failed, refused, and neglected to cure its other breaches of the Loan Agreements, including making other required payments when due.

31. Pursuant to Section 2 of the Guaranty Agreement, each Guarantor "unconditionally and irrevocably guarantees to Lender the punctual payment when due, whether by lapse of time, by acceleration of maturity, or otherwise, and at all times thereafter, of the Guaranteed Obligations. The term "Guaranteed Obligations" as used in the Guaranty Agreement means *inter alia* the Indebtedness Borrower owes to Lender, any and all pre- and post-maturity interest thereon and expenses, including reasonable attorneys' fees and costs.

### Arizona Law Entitles Lender to Consequential Damages

32. Lender informed Defendants and Defendants understood that the Loan was funded using a commercial line of credit from Lender's bank.

33. It was foreseeable when Defendants entered into the Loan Agreements that Borrower's failure to pay its Obligations to Lender when due would put Lender's commercial credit facility with its bank in jeopardy and that damages would likely result.

34. As a direct and proximate cause of Defendants failure to timely pay the Obligations, including the total amount of Borrower's Indebtedness when due, Lender's bank has in fact closed Lender's commercial credit facility. As a result, Lender has suffered substantial damages, including lost profits, in an amount to be determined at trial but in no event less than $500,000.

### COUNT I
### BREACH OF CONTRACT
(Against Borrower)

35. Plaintiff hereby adopts and incorporates the prior allegations set forth above as though fully set forth herein.

36. Each of the Loan Agreements are valid and enforceable.

37. As set forth above, Borrower has breached the Loan Agreements.

38. Despite demand, the Guarantors, each of them, have failed, refused, and

neglected to cure its numerous Defaults.

39. Lender has fully performed all of its material obligations under the Loan Agreements.

40. As a direct and proximate result of Borrower's breach of the Loan Agreement, Lender has and continues to suffer damages in an amount to be determined at trial but in no event less than the total amount of Indebtedness.

41. Because this claim arises out of a contract, Plaintiff is entitled to recover its attorney's fees and costs pursuant to A.R.S. § 12-341.01.

## COUNT II

### BREACH OF CONTRACT
(Against Guarantors)

42. Plaintiff hereby adopts and incorporates the prior allegations set forth above as though fully set forth herein.

43. The Guaranty Agreement is valid and enforceable against each Guarantor.

44. Each Guarantor guaranteed to Lender the "prompt payment and performance" of all Borrowers obligations under Loan Agreements.

45. As set forth above, Borrower has breached its obligations under the Loan Agreements.

46. Despite demand, Guarantors have failed, refused, and neglected to immediately pay the amount due on the Guaranteed Obligations.

47. Lender has fully performed all of its material obligations under the Loan Agreements.

48. As a direct and proximate result of Guarantors breach of the Guaranty Agreement, Lender has and continues to suffer damages in an amount to be determined at trial but in no event less than the total amount of the Indebtedness.

49. Because this claim arises out of a contract, Plaintiff is entitled to recover its attorney's fees and costs pursuant to A.R.S. § 12-341.01.

## COUNT III

### BREACH OF DUTY OF GOOD FAITH AND FAIR DEALING
(Against All Defendants)

50. Plaintiff hereby adopts and incorporates the prior allegations set forth above as though fully set forth herein.

51. Implicit in every contract in Arizona is the covenant of good faith and fair dealing.

52. Defendant breached the covenant of good faith and fair dealing by failing, refusing, and neglecting to promptly perform the obligations set forth in the Loan Agreements, not limited to failure to deposit all revenues in the Payment Account.

53. As a direct and proximate result of Defendants breach of duty, Lender has suffered substantial damages in an amount to be determined at trial but in no event less than the total amount of the Indebtedness, plus consequential damages.

54. Because this claim arises out of a contract, Plaintiff is entitled to recover its attorney's fees and costs pursuant to A.R.S. § 12-341.01.

## COUNT IV

### FRAUD
(All Defendants)

55. Plaintiff hereby adopts and incorporates the prior allegations set forth above as though fully set forth herein.

56. Defendants made certain false representations to Lender, both orally and in writing, including *inter alia* (i) that Sales Contracts delivered to Lender that contained false information and were forged ("Fake Contracts") were in fact legitimate sales contracts, and (ii) that certain Sales Contract payments delivered to Lender were payments from legitimate

customer but were in fact phantom payments ("Phantom Payments") that Defendants paid in order to conceal the fact that those certain customer accounts were no longer qualified accounts.

57. The representations regarding the Fake Contracts and Phantom Payments were material misrepresentations.

58. Defendants knew at all relevant times that the representations regarding the Fake Contracts and Phantom Payments were false.

59. At all relevant times, Lender did not know Defendants' representations regarding the Fake Contracts and Phantom Payments were false.

60. Defendants made the false representations for the purpose of inducing Lender to extend more credit than Borrower was entitled to under the subject Loan Agreements.

61. Lender reasonably relied on the truth of Defendants' representations when it extended more credit to Borrower than it was entitled to under the Loan Agreements.

62. Lender had the right to rely on the representations Defendants when it extended the credit to Borrower.

63. As a direct and proximate result of Defendants' fraudulent conduct, Lender has suffered substantial damages in an amount to be determined at trial but in no event less than the total amount of the Indebtedness and any consequential damages.

64. Defendants intentionally engaged in a pattern of aggravated and outrageous conduct with an "evil hand guided by an evil mind" with the clear intent to injure, defraud, or deliberately interfere with the legal rights of Plaintiff, entitling it to an award of punitive damages in an amount to be determined at trial but in no event less than $1,000,000.00.

## COUNT V
### MISREPRESNTATION
(Borrower)

65. Plaintiff hereby adopts and incorporates the prior allegations set forth above as

though fully set forth herein.

66. Defendants made false, material representations to Lender regarding the Fake Contracts and the Phantom Payments.

67. Defendants made the false representation to Lender in order to induce Lender to extend more credit to Borrower than it was entitled to under the Loan Agreements.

68. Lender reasonably relied upon the false, material representations when it extend more credit to Borrower than it was entitled to under the Loan Agreements.

69. As a direct and proximate result, Lender has been damaged in an amount to be proven at trial.

70. Defendants intentionally engaged in a pattern of aggravated and outrageous conduct with an "evil hand guided by an evil mind" with the clear intent to injure, defraud, or deliberately interfere with the legal rights of Plaintiff, entitling it to an award of punitive damages in an amount to be determined at trial but in no event less than $1,000,000.

## COUNT VI
### CIVIL CONSPIRACY
(All Defendants)

71. Plaintiff hereby adopts and incorporates the prior allegations set forth above as though fully set forth herein.

72. Defendants conspired and agreed to engage in a scheme to obtain loan proceeds from Lender by fraudulent means.

73. Specifically, Defendants conspired to *inter alia* submit the Fake Contracts and make the Phantom Payments.

74. Defendants knew that the purpose of such action taken against Lender was fraudulent and unlawful.

75. Upon information and belief, Defendants knowingly or recklessly aided one another to commit the unlawful acts.

76. As a direct and proximate result of the unlawful conspiracy, Lender has suffered substantial damages in an amount to be determined at trial.

77. Defendants intentionally engaged in a pattern of aggravated and outrageous conduct with an "evil hand guided by an evil mind" with the clear intent to injure, defraud, or deliberately interfere with the legal rights of Plaintiff, entitling it to an award of punitive damages in an amount to be determined at trial but in no event less than $1,000,000.

## COUNT VII
### CIVIL RICO VIOLATION – A.R.S. 13-2314.04 et seq.
(All Defendants)

78. Plaintiff hereby adopts and incorporates the prior allegations set forth above as though fully set forth herein.

79. Defendants engaged in a pattern of unlawful activity for the purpose of financial gain by committing as least two acts of racketeering in furtherance of a fraudulent scheme as defined in A.R.S. 13-2310.

80. The unlawful activity of Defendants satisfies the requirements of A.R.S. 13-2314.04 since Defendants committed at least two acts of racketeering that are related to each other, continuous and extended over a substantial period of time and the last act of racketeering occurred within five years of the first act.

81. Defendants engaged in a pattern of unlawful activity that caused substantial damages to Lender.

82. The substantial damages sustained by Lender was the reasonably foreseeable result of Defendants pattern of unlawful activity.

83. Guarantors performed, authorized, requested, commended, ratified or recklessly

tolerated the Borrowers unlawful conduct.

84. Defendants acquired the ill-gotten Loan proceeds and are therefore involuntary trustees of the same and must hold the proceeds in constructive trust for the benefit of Lender.

85. As a result of Defendants pattern of racketeering activities, and the actions or failure to act by each Defendant, Lender has suffered substantial damages in an amount the be determined at trial but in no event less than treble the amount of total amount of Lender's compensatory and consequential damages as provided by statute, plus reasonable attorney's fees and costs and pre-judgment interest and late fees at the contractual rate.

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment as follows:

A. For compensatory damages in an amount to be determined at trial but in no event less than the total amount of the Indebtedness;

B. For consequential damages in an amount to be determined at trial $500,000;

C. For punitive damages against Seller for lost profits in an amount to be determined at trial but in no event less than $1,000,000;

D. For treble damages for the Civil Rico Violation;

E. For interest on the total amount of damages at the maximum rate allowed by law from the date of judgment, until paid in full;

F. For an award of attorney's fees and costs and interest on the same at the highest legal rate from the date of judgment, until paid in full; and in the event of default, at least $5,000; and

G. For such other and further relief as may be proper and just under the circumstances.

DATED this 26th day of January, 2022.

**THE LAW OFFICE OF NINO ABATE, PLC**

By: /s/ Nino Abate
Nino Abate, Esq.