**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| BHPH Capital LLC, | No. CV-22-00143-PHX-DJH |
| Plaintiff, | **ORDER** |
| v. | |
| JV Wholesalers LLC, et al., | |
| Defendants. | |

Plaintiff BHPH Capital LLC ("Plaintiff") has filed a Motion for Partial Summary Judgment (Doc. 77) on its breach of contract claims against Defendants JV Wholesalers LLC ("JV"), James Lithgow Jr. ("Mr. Lithgow"), Peter J. Cappiello Sr. and Ann Cappiello ("The Cappiello's") (collectively, "Defendants"). The Cappiello's and JV have filed a response to Plaintiff's Motion and Plaintiff has filed a Reply. (Docs. 79, 81). Mr. Lithgow, who has since filed for bankruptcy[1] (Doc. 83), has filed his own response motion as well, asserting defective service of process under Federal Rule of Civil Procedure 4. (Doc. 80). For the reasons that follow, the Court denies Plaintiff's Motion.

**I.   Background**

Plaintiff is a lender offering business lines of credit for "Buy-Here-Pay-Here auto dealerships and/or their related finance companies." (Doc. 1 at ¶ 11). On or about

---

[1] The parties shall meet and confer to inform the Court whether this proceeding should be stayed as to Mr. Lithgow. *See Eskanos & Adler, P.C. v. Leetien*, 309 F.3d 1210, 1214 (9th Cir. 2002) ("The plain language of § 362(a)(1) [of the Bankruptcy Code] prohibits the continuation of judicial actions.").

September 8, 2020, JV entered into a revolving line of credit arrangement with Plaintiff under which JV could borrow up to $1,500,000.00 ("the Loan Agreement"). (*Id*. at ¶ 12). JV borrowed funds from Plaintiff and the Cappiello's and Mr. Lithgow personally guaranteed the loan between JV and Plaintiff. (*Id*. at ¶ 13).

The Defendants agreed to pay the outstanding principal and any accrued interest by the maturity date of the Loan Agreement: September 30, 2021 (the "Maturity Date"). (*Id*. at ¶ 14; Doc. 77-2 at 38). Plaintiff alleges that Defendants breached the Loan Documents by failing to pay the owed amount of $814,340.38. (Doc. 1 at ¶ 25; Doc. 77 at 3). On October 1, 2021, Plaintiff demanded that Defendants pay the outstanding amounts under the Loan Documents (the "Demand Letter"). (Doc. 77-6 at 1). Plaintiff states that Defendants made principal payments of $631,000.75 after the Maturity Date but failed to ever pay a total amount due of $318,538.14 that they owed under the Loan Agreement. (Doc. 77 at 4).

After this alleged failure to pay, Plaintiff brought claims for: (1) breach of contract against JV, (2) breach of contract against Mr. Lithgow and the Cappiello's, (3) breach of the duty of good faith and fair dealing against all Defendants, (4) fraud against all Defendants, (5) misrepresentation against JV, (6) civil conspiracy against all defendants, and (7) violations of the Civil Racketeer Influenced and Corrupt Organizations (RICO) Act, A.R.S. § 13-2314.04 *et seq*. against all Defendants. (Doc. 1 at ¶¶ 35–85). Plaintiff now seeks summary judgment on its breach of contract claims.

**II.   Discussion**

Plaintiff argues that it is entitled to partial summary judgment on both of its breach of contract claims. (Doc. 77 at 2). The parties agree that Arizona law applies to Plaintiff's breach of contract claims. (*Id*. at 4; Doc. 79 at 6). Mr. Lithgow argues he should be dismissed from this lawsuit due to service and jurisdictional defects. (Doc. 80 at 2). He also joins in JV and the Cappiello's arguments in their Response Motion (Doc. 79). (Doc. 80 at 3). The Court will first address whether it has personal jurisdiction over Mr. Lithgow.

**A.     Service**

Mr. Lithgow argues in his Response that he should be dismissed as a party due to "service and jurisdictional defects." (Doc. 80 at 2). Mr. Lithgow states that he was served outside of the ninety-day window mandated by Rule 4(m), thereby rendering Plaintiff's service of process deficient. (*Id.*) Plaintiff asserts that these arguments are meritless, and that Mr. Lithgow has waived service by participating in this case. (Doc. 81 at 8–9).

Rule 4 of the Federal Rules of Civil Procedure governs service requirements. Rule 4(m) states that "[i]f a defendant is not served within 90 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time." Fed. R. Civ. P. 4(m). "A party must be properly served for the Court to obtain personal jurisdiction over that party." *State Farm Fire & Cas. Co. v. Amazon.com Inc.*, 2018 WL 2240144, at *1 (D. Ariz. May 16, 2018) (citing *Hickory Travel Sys., Inc. v. TUI AG*, 213 F.R.D. 547, 551 (N.D. Cal. 2003)). Insufficient service of process is a "negative defense" contained in Rule 12(b)(5).

To preserve a "negative defense," the defendant must raise it in either (1) a Rule 12 motion or (2) a responsive pleading/ an amendment allowed by Rule 15(a)(1). *See* Fed. R. Civ. P. 12(h)(1)(B)(i)–(ii); *Ear v. Empire Collection Auths., Inc.*, 2012 WL 3249514, at *2 (N.D. Cal. Aug. 7, 2012) ("Rule 12(h) explicitly permits certain negative defenses to be pled in an answer, specifically, the defenses enumerated in Rule 12(b)(2)–5): lack of personal jurisdiction, improper venue, insufficient process, and ***insufficient service of process***.") (emphasis added). "The purpose of pleading those defenses in an answer is to avoid waiving them." *Ear*, 2012 WL 3249514, at *2. "A defendant who has notice of an action against him may force the plaintiff to prove that service has been made and that jurisdiction is proper by filing a Rule 12(b) motion to dismiss." *S.E.C. v. Internet Sols. for Bus. Inc.*, 509 F.3d 1161, 1166 (9th Cir. 2007). "The plain language of [Rule12] require[s] a defendant to raise insufficiency of service of process either in his answer or by motion prior to it . . . If the Defendant fails to take that remedial step, the defense is waived."

*Greene v. Keller*, 224 F.R.D. 659, 661 (D. Nev. 2004) (internal citations omitted). However, asserting an insufficient process or improper service of process defense in an answer "does not preserve the defense in perpetuity. To preserve the defense, the defendant must still present it by motion for the court's consideration in a reasonably timely manner." 1 FEDERAL LITIGATION GUIDE § 3.21.

Dismissal for insufficient service of process is disfavored in the Ninth Circuit. *See United Food & Comm. Workers Union v. Alpha Beta Co.*, 736 F.2d 1371, 1382 (9th Cir. 1984). "Substantial compliance" with Rule 4's service requirements is sufficient so long as the opposing party receives "sufficient notice of the complaint." *Straub v. A P Green, Inc.*, 38 F.3d 448, 453 (9th Cir. 1994). Even if the plaintiff's service of process is insufficient, the Court retains discretion in deciding whether to dismiss the action or to quash service. *S.J. v. Issaquah Sch. Dist. No. 411*, 470 F.3d 1288, 1293 (9th Cir. 2006) (citing *Stevens v. Sec. Pac. Nat'l Bank*, 538 F.2d 1387, 1389 (9th Cir. 1976)). Furthermore, a defendant must show that the defective summons prejudiced him. *United Food*, 736 F.2d at 1382 (stating that dismissal under Rule 4 "is generally not justified absent a showing of prejudice"). If service is defective, as long as it still informs the defendant of the nature of the claims against it, dismissal is disfavored in order to promote the policy of disposing of cases on their merits. *See State Farm Fire & Cas. Co.*, 2018 WL 2240144, at *2 (citing Fed. R. Civ. P. 1).

"[A] party can be held to have waived a defense listed in Rule 12(h)(1) through conduct, such as extensive participation in the discovery process or other aspects of the litigation of the case even if the literal requirements of Rule 12(h)(1) have been met." *Padilla v. Walgreen Hastings Co.*, 2009 WL 2951025, at *4 (D.N.M. Aug. 11, 2009) (citing 5C FED. PRAC. & PROC. CIV. § 1391 Waiver of Certain Defenses–Rule12(h)(1) (3d ed.)). "Most defenses, including the defense of lack of personal jurisdiction, may be waived as a result of the course of conduct pursued by a party during litigation." *Peterson v. Highland Music, Inc.*, 140 F.3d 1313, 1318 (9th Cir. 1998). In *Peterson*, the Ninth Circuit stated that if a defendant were to engage in "sandbagging" by "raising the issue of personal

jurisdiction on a motion to dismiss, deliberately refraining from pursuing it any further when his motion is denied in the hopes of receiving a favorable disposition on the merits, and then raising the issue again on appeal" the defendant would waive any right to pursue the defense. *Id.*

Applying these rules and Ninth Circuit precedent, the Court finds that Mr. Lithgow has waived his insufficient service defense. Plaintiff filed its Complaint on January 26, 2022; therefore, it was required to serve Defendants by April 26, 2022. (Doc. 1 at 1). Mr. Lithgow was not served until May 25, 2022, however. (Doc. 31). Indeed, the Court addressed this issue previously in its January 19, 2023, Order. (*See* Doc. 65). There, Mr. Lithgow had filed a Motion to Set Aside Default Judgment (Doc. 45) and the Court found that he was indeed served outside of Rule 4's ninety-day service requirement. (*Id.* at 4). Mr. Lithgow also asserted ineffective service as an affirmative defense in his answer. (Doc. 37 at 9).

Although Mr. Lithgow did assert ineffective service as an affirmative defense in his answer (Doc. 37 at 9), he has done nothing to preserve his defense since that time. Mr. Lithgow did not re-assert this defense through a 12(b) motion, rather; he failed to pursue it until now. This type of "sandbagging" waives a 12(b) defense. *See Peterson*, 140 F.3d at 1318. Furthermore, Mr. Lithgow has waived his insufficient service defense through his conduct in litigation. It is well settled that a defendant can waive a 12(b) defense through their conduct, such as extensive participation in the discovery process. *See Padilla*, 2009 WL 2951025, at *4. As Plaintiff notes, Mr. Lithgow has done so by being part of the discovery process. (Docs. 71; 75; 76).

Moreover, Mr. Lithgow has failed to assert that the defective service prejudiced him. It is also well established that a party seeking dismissal due to insufficient service of process must, at minimum, assert that the insufficient service prejudiced them. *See United Food*, 736 F.2d at 1382 (stating that dismissal under Rule 4 "is generally not justified absent a showing of prejudice"). Mr. Lithgow has not demonstrated prejudice.

Finally, dismissal would be disfavored in this case, as the service that occurred still

informed Mr. Lithgow of the nature of the claims against him and the Federal Rules of Civil Procedure favor that this case should be decided upon its merits. *See State Farm Fire & Cas. Co.*, 2018 WL 2240144, at *2 (citing Fed. R. Civ. P. 1). Because Plaintiff substantially complied with Rule 4's service requirements, Plaintiff's late service upon Mr. Lithgow is not insufficient—especially since Mr. Lithgow has never attempted to "force the plaintiff to prove that service has been made and that jurisdiction is proper by filing a Rule 12(b) motion to dismiss." *Internet Sols. for Bus. Inc.*, 509 F.3d at 1166; *see also Straub*, 38 F.3d at 453.

Thus, Mr. Lithgow has waived his ineffective service of process defense and the Court's Order shall apply to him with equal force.

### B.     Summary Judgment

#### 1.     Legal Standard

A court will grant summary judgment if the movant shows there is no genuine dispute of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). A fact is "material" if it might affect the outcome of a suit, as determined by the governing substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A factual dispute is "genuine" when a reasonable jury could return a verdict for the nonmoving party. *Id*. Here, a court does not weigh evidence to discern the truth of the matter; it only determines whether there is a genuine issue for trial. *Jesinger v. Nevada Fed. Credit Union*, 24 F.3d 1127, 1131 (9th Cir. 1994).

The moving party bears the initial burden of identifying portions of the record, including pleadings, depositions, answers to interrogatories, admissions, and affidavits, that show there is no genuine factual dispute. *Celotex*, 477 U.S. at 323. Once shown, the burden shifts to the non-moving party, which must sufficiently establish the existence of a genuine dispute as to any material fact. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585–86 (1986). Where the moving party will have the burden of proof on an issue at trial, the movant must "affirmatively demonstrate that no reasonable

trier of fact could find other than for the moving party." *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007). On an issue as to which the nonmoving party will have the burden of proof, however, the movant can prevail "merely by pointing out that there is an absence of evidence to support the nonmoving party's case." *Id.* (citing *Celotex Corp.*, 477 U.S. at 323). If the moving party meets its initial burden, the nonmoving party must set forth, by affidavit or otherwise as provided in Rule 56, "specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 250; Fed. R. Civ. P. 56(e). In judging evidence at the summary judgment stage, the court does not make credibility determinations or weigh conflicting evidence. Rather, it draws all inferences in the light most favorable to the nonmoving party. *See T.W. Electric Service, Inc. v. Pacific Electric Contractors Ass'n*, 809 F.2d 626, 630-31 (9th Cir. 1987).

### 2. Analysis

Plaintiff argues that it is entitled to summary judgment on both of its breach of contract claims against (1) JV and (2) the "Guarantors" (the Cappiello's and Mr. Lithgow). (Doc. 77 at 4). The Court disagrees.

"To state a breach of contract claim [under Arizona law], a plaintiff must allege that (1) a contract existed, (2) it was breached, and (3) the breach resulted in damages." *Riverwalk Condo. Unit Owners Ass'n v. Travelers Indem. Co.*, 2018 WL 3774084, at *2 (D. Ariz. June 28, 2018) (citing *Steinberger v. McVey ex rel. Cty. of Maricopa*, 234 Ariz. 125, 140 (Ariz. Ct. App. 2014)). "For an enforceable contract to exist, there must be an offer, an acceptance, consideration, and sufficient specification of terms so that the obligations involved can be ascertained." *Rogus v. Lords*, 804 P.2d 133, 135 (Ariz. Ct. App. 1991).

"It is a general rule that the construction of a contract is a question for the court when its terms are plain and unambiguous on its face." *Riverwalk Condo. Unit Owners Ass'n*, 2018 WL 3774084, at *2 (citing *Shattuck v. Precision Toyota, Inc.*, 115 Ariz. 586, 588, 566 P.2d 1332, 1334 (1977). The existence of a contractual ambiguity is a question of law while the actual meaning of an ambiguous provision is a question of fact. *Hanson*

*Aggregates Mid Pac., Inc. v. Pioneer*, 2008 WL 11391358, at *2 (N.D. Cal. Mar. 24, 2008) (internal citations omitted). A contract or contract term is ambiguous if, "the terms of a contract could suggest more than one meaning." *Id*; *see also Kennewick Irr. Dist. v. United States*, 880 F.2d 1018, 1032 (9th Cir. 1989) ("A contract is ambiguous if reasonable people could find its terms susceptible to more than one interpretation.").

Plaintiff argues that (1) it entered into a valid Loan Agreement and Promissory Note with Defendants, (2) Defendants breached these agreements by failing to pay the amount due on the loan on or before the Maturity Date and (3) Plaintiff has been injured due to this breach. (Doc. 77 at 4). The existence of a valid contract is not disputed by Defendants, however, whether this contract was breached, the amount owed, and the applicable interest rate are. (Doc. 79 at 6). Defendants assert that Plaintiff refused to give them a full statement of the amount that they owed and that they tried to pay the loan off in January of 2022, but that Plaintiff refused to release titles to Plaintiff's property it held as collateral. (*Id*. at 7).

As an initial matter, the Court concludes that it cannot find as a matter of law that the Loan Agreement's terms are plain and unambiguous. The conduct of the parties creates a question of fact as to the actual meaning of the Loan Agreement's ambiguous terms. The Loan Agreement states that Defendants would have access to a line of credit up to $1,500,000.00, but not the applicable interest rate or how much Defendants actually borrowed from Plaintiff. (Doc. 77-2 at 1). The Demand Letter states that "the total principal amount of [the] loan plus all accrued interest" was $812,729.49. (Doc. 77-6 at 1). The Demand Letter does not include information regarding the amount borrowed, the principal or the amount of accrued interest. (*Id.*) The Demand Letter states that the applicable interest rate "pursuant to section 2(a) of the Loan and Security Agreement" is 18%. (*Id.*) However, the Demand Letter reads an interest rate of 18% into this paragraph, as no interest rate appears in this part of the Loan Agreement. (Doc. 77-2 at 7).

Further, this interest rate is not included anywhere else in the Loan Agreement. The Loan Agreement mentions an "Advance Rate," but this rate is the rate "against the amount

- 8 -

of Qualified Collateral," not the interest rate to be applied against the principal Defendants' borrowed. (Doc. 77-2 at 1). The Promissory Note states that, prior to the Maturity Date or in the event Defendants Default, the "Rate" shall be the greater of (1) the 1-Month "LIBOR Rate plus 12.50%" or (2) 13.00%. (Doc. 77-3 at 1). The promissory note states that this "LIBOR Rate" is a variable rate of interest published by the Wall Street Journal. (*Id.*) Plaintiff asserted in its Demand Letter that the "Default Interest Rate" Defendants owed would be 18%, however, Plaintiff did not state how it came to this interest rate. (Doc. 77-6 at 1). Defendants assert that "the majority" of the $812,729.49 is due to this "Default Rate" of 18%—a rate that Defendants argue they did not agree to. (Doc. 79-1 at ¶ 7). Plaintiff does not include this information for the Court to review or respond to Defendants' argument. (*See* Doc. 81). As well, Plaintiff does not provide any evidence to show that the 1-Month LIBOR Rate plus 12.50% equals 18%, as it stated in its Demand Letter, and the Court declines to make this calculation for Plaintiff.

Due to these ambiguities in the Loan Agreement, the Promissory Note, and the Demand Letter, the Court cannot find that "sufficient specification of terms [existed] so that the obligations involved can be ascertained;" therefore, the Court cannot conclude that a valid contract existed as a matter of law—much less that it was breached. *Rogus*, 804 P.2d at 135. In light of these ambiguities, summary judgment regarding Plaintiff's breach of contract claims is inappropriate here. *See United States v. Contra Costa Cnty. Water Dist.*, 678 F.2d 90, 91 (9th Cir. 1982) (holding that "[s]ummary judgment is appropriate only if the contract is unambiguous" and whether contractual language is ambiguous is a question of law). Thus, Plaintiff has failed to meet its burden and is not entitled to summary judgment. *See Soremekun*, 509 F.3d at 984.

Accordingly,

**IT IS ORDERED** that Plaintiff's Partial Motion for Summary Judgment (Doc. 77) is **DENIED**.

**IT IS ALSO ORDERED** that the parties shall meet and confer and inform the Court whether this proceeding should be stayed as to Mr. Lithgow pending his bankruptcy

1 proceedings (Doc. 83) within **seven (7) days of this Order**.

2 **IT IS FURTHER ORDERED** that, in light of Plaintiff's remaining claims for breach of contract, the parties are directed to comply with Paragraph 9 of the Rule 16 Scheduling Order (Doc. 42 at 5) regarding notice of readiness for pretrial conference. Upon a joint request, the parties may also seek a referral from the Court for a settlement conference before a Magistrate Judge.

Dated this 5th day of February, 2024.

_____
Honorable Diane J. Humetewa
United States District Judge